**Stephen R. DUNN, Petitioner,**

v.

**KENTUCKY BAR ASSOCIATION and Character and Fitness Committee, Respondents.**

No. 2000–SC–0799–KB.

Supreme Court of Kentucky.

April 21, 2005.

Peter L. Ostermiller, Louisville, Stephen R. Dunn, Providence, Counsel for Petitioner.

Bruce K. Davis, Executive Director, Linda Gosnell, Chief Bar Counsel, Kentucky Bar Association, Frankfort, Bonnie C. Kittinger, Director and General Counsel, Kentucky Office of Bar Admissions, Lexington, Counsel for Respondents.

## OPINION AND ORDER

Steven R. Dunn, of Providence, Kentucky was admitted to practice law in the Commonwealth of Kentucky on October 3, 1979. Seeking reinstatement from disciplinary suspension, he moves this Court to rule that he has not been suspended for a period exceeding five years thereby alleviating him of the test requirements of SCR 3.510(4). He asks that he be allowed to proceed under SCR 3.510(3) which does not require him to take an examination prior to reinstatement.

Dunn is the same attorney we have addressed in two cases, *Kentucky Bar Association v. Dunn,* 965 S.W.2d 158 (Ky.1998) (Dunn I) and *Kentucky Bar Association v. Dunn,* 90 S.W.3d 461 (Ky.2002) (Dunn II).

This Court rendered *Dunn I*, dated March 19, 1998. We suspended him for a period of six months probated for two years. Among the facts stated therein, Dunn had been arrested on June 13, 1996 and initially charged with four class D felony counts of first-degree wanton endangerment. A police officer witnessed Dunn driving on the wrong side of the road causing at least four other drivers to drive off the road to avoid collision. When the officer attempted to pull him over, Dunn sped up and drove about five miles before pulling into a driveway. In addition to the probated suspension, the order required that Dunn abstain from intoxicating drinks and attend the Alcoholics Anonymous meetings as he promised the Board of Governors that he would.

On September 30, 1998, Dunn was indicted in Hopkins Circuit Court for Assault, first degree. The facts underlying the indictment were based on an accident occurring due to a second offense DUI on March 10, 1997. This accident resulted in injuries to the driver of another vehicle struck by Dunn. Victim impact statements cited in *Dunn II* state that the tragic injuries sustained included crushed vertebrae, facial lacerations requiring plastic surgery, and loss of peripheral vision.

On August 30, 1999, he entered a guilty plea to second-degree assault, which automatically suspended him. SCR 3.166(1). In November 1999, he was sentenced to seven years imprisonment. In February 2000, his motion for shock probation was granted with the terms that he be placed on probation for five years, or until February of 2005.

On September 11, 2000, Dunn had applied to be reinstated. The reinstatement was not possible during that time because the Inquiry Commission had charges developing and pending regarding the second-degree assault. The KBA had placed the application in abeyance pending the resolution of the disciplinary charges.

In *Dunn II*, we addressed Dunn's first application for reinstatement and held that the KBA was not estopped from seeking further charges stemming from the underlying facts and that a conviction for second-degree assault warranted suspension from the practice of law while he remained on criminal probation. We suspended him until his criminal probation for the second-degree assault ended, that is, until February 2005. Among the reasons we gave for the length of the suspension was that Dunn could be imprisoned again if he failed to comply with the terms of his probation. At no time since 1999, has this Court reinstated Dunn to the practice of law.

In sum, Dunn pleaded guilty to second-degree assault, incurring automatic suspension on August 30, 1999, and in 2002, we imposed suspension to last until the end of his probation, February 2005. This Court has not yet reinstated Dunn to the practice of law after his automatic suspension incurred on August 30, 1999.

As it stands now, the Character and Fitness Committee has approved Dunn's application for reinstatement subject to the conditions imposed in SCR 3.510(4). SCR 3.510 governs the procedural requirements of reinstatement from disciplinary suspension. Section 4 pertains to lawyers whose suspension has prevailed for longer than five years and requires among other things, that the applicant successfully complete an examination administered by the Bar Examiners in accordance with SCR 3.500(3). Dunn argues that his suspension has not prevailed for longer than five years at the time of his application for reinstatement. He contends that SCR 3.510(3) should govern his reinstatement, that is, without examination. We disagree.

■ Among his contentions, Dunn cites SCR 3.510 as acting from the time of suspension until the time of application for reinstatement. For his purposes, he argues that his application for reinstatement dated September 11, 2000 is the relevant end date to be considered for purposes of SCR 3.510. The status of that application was discussed in *Dunn II,*

> "On May 3, 2001, a hearing was held before the Character and Fitness Committee (Committee) regarding the Respondent's reinstatement application. During the hearing, procedural questions arose regarding Respondent's felony guilty plea, and the Committee placed the reinstatement application in abeyance."

90 S.W.3d, at 462. Dunn argued that the KBA could not pursue the further disciplinary action because of the punishment already rendered by this Court in *Dunn I.* We disagreed with his arguments there, and we reaffirm that ruling here. The application filed in 2000 was untimely.

Dunn's suspension began the day after he incurred automatic suspension on August 30, 1999. The version of SCR 3.166 applicable in 1999, reads, "Any member of the Kentucky Bar Association who pleads guilty . . . of a felony as defined in KRS 500.080 shall be automatically suspended from the practice of law in this Commonwealth. [. . .] The suspension under this rule shall remain in effect until dissolved or superseded by order of the Court." Only two options are available for escape from suspension by SCR 3.166: an order dissolving the suspension or an order superseding that suspension with an imposed disciplinary suspension.

In *Dunn II,* this Court superseded the automatic suspension by suspending Dunn for a period of time to run concurrent to his criminal probation, which at that time was until February 2005. The length of the suspension was not stated as a fixed term of time. Examples of a fixed term suspension would be 180 days, two years, or five years. Instead, this Court suspended Dunn for as long as his criminal probation because at any time during that probation, Dunn was in jeopardy of being sent back to jail. Consequently, the suspension was set for a period of time longer than five years, beginning the day after August 30, 1999 until February 2005.

■ Dunn's second argument is that the automatic suspension is not a disciplinary suspension. This argument is without merit. An automatic suspension pursuant to SCR 3.166 is clearly a disciplinary suspension because it is based on misconduct of the attorney. The automatic suspension is a result of a conviction for commission of a felony. It is counted as part of the total time used to determine how long the suspension has prevailed for the purposes of SCR 3.510.

■ We are cognizant of Dunn's argument that the time of application for reinstatement should govern which length of time is used for procedure under SCR 3.510. However, that argument has no merit. The earliest time for application for reinstatement is provided in SCR 3.510(5) as ninety days prior to the end of the suspension. Subsection (5) therefore contemplates a fixed date or term of suspension towards which the operation of the other subsections work. For instance, under Dunn's argument, a lawyer suspended for 240 days cannot apply for reinstatement at day 150 and expect SCR 3.510(2) to apply. SCR 3.510(2) applies to suspensions prevailing less than 180 days but the lawyer has a 240–day suspension. The application date is therefore irrelevant to the length of suspension unless it is late.

Under SCR 3.510, the date of the application for reinstatement only becomes a

factor when the application is delayed longer than the suspension. Late or delayed applications cut the other way because they lengthen the suspension. If a lawyer suspended for three years is delinquent in the requirements of SCR 3.510(1) and does not meet those requirements until six years later, the delay will change the rules applicable to the reinstatement. SCR 3.510(3) would normally apply to the reinstatement of a lawyer suspended for three years. However, if by delay in paying the bonds or costs of original proceedings, the lawyer's suspension has persisted longer than 5 years, SCR 3.510(4) will control.

Because his suspension was to run concurrently with his criminal probation, the earliest time he could apply for reinstatement under the current SCR 3.510(5) would be anytime during the last ninety days. The end of Dunn's suspension was stated in *Dunn II* to be the end of his criminal probation, which was February 2005. Under SCR 3.510(5), the earliest time for applying to be reinstated is November 2004. Even if the application date were relevant, this length of time is longer than five years. Under this scenario, Dunn's suspension would persist longer than five years; thereby, SCR 3.510(4) would apply.

Dunn did not have a fixed term-of-days suspension, but rather one fixed on the end of criminal probation. His probation had a fixed end date, February 2005, but the wording of our suspension in *Dunn II* allowed the suspension to end earlier if the criminal probation was ended. Therefore, applying the rule to the expected date would show that the suspension was originally to persist longer than five years, August 1999 to February 2005. On September 13, 2003, the Hopkins Circuit Court terminated his criminal probation. Dunn sought reinstatement and on May 12, 2004, the Character and Fitness Committee recommended resumption of the practice of law. Finally, on September 7, 2004, the KBA Board of Governors adopted the recommendation and approved Dunn's application for reinstatement. On October 16, 2004, Dunn was advised by letter that he must take and pass a written examination, as required by SCR 3.510(4), prior to having the application submitted to this Court.

Dunn's suspension has prevailed for longer than five years. Accordingly, SCR 3.510(4) applies to this reinstatement procedure.

The motion is DENIED. The reinstatement application is governed by SCR 3.510(4) which requires the successful completion of a written examination prior to the submission of the application to this Court.

All concur.